UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

RAUL GURROLA,

    Plaintiff,

v().  Civil Action No. 07-1954 (PLF)

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

    Defendant.

---

OPINION

    Plaintiff Raul Gurrola asks this Court to reverse the denial of his application for Social Security disability insurance benefits or, in the alternative, to remand this case to the Social Security Administration ("SSA") for further proceedings. The defendant, the Commissioner of the SSA, opposes that motion and requests affirmance of the SSA's determination. After careful review of the parties' papers, the administrative record, and the relevant case law, the Court will grant the defendant's motion for affirmance.

I. BACKGROUND

    In order to receive disability benefits under the Social Security Act, Mr. Gurrola must demonstrate that he is "disabled." 42 U.S.C. §§ 423(a)(1)(D), 1382(a)(1). He is disabled within the meaning of the statute "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. §1382c(a)(3)(A). In general, an individual qualifies as disabled "only if his

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." Id. § 1382c(a)(3)(B). Mr. Gurrola contests the finding by an Administrative Law Judge ("ALJ") of the SSA that he is not disabled because he is able to engage in substantial "light" work that exists in the national economy.[1]

Mr. Gurrola moved to the United States from Mexico in 1980 and over the next two decades worked as an unskilled laborer in various positions. Administrative Record ("A.R.") at 17, 69. In May of 2000, he began a new job at a newspaper, *The Gazette*, that involved catching piles of papers and stacking them in pallets. Id. at 69-70, 156. Less than a month later, on May 31, 2000, he ceased work because of a lower back injury. Id. at 55, 122. After seeking medical care and receiving physical therapy, Mr. Gurrola was able to return to work in June 2000. Id. at 121-22. On June 20, 2000, however, Mr. Gurrola met again with his doctor and, although reporting decreased pain, was described by his doctor as being "fairly vocal about the fact that he . . . had no work restrictions and [was] doing repetitive lifting of 25 pound bundles of papers." Id. at 117. His doctor advised *The Gazette* that Mr. Gurrola should avoid lifting more than twenty pounds at a time and minimize bending and twisting. Id. at 107, 117. In light of those restrictions, *The Gazette* suspended Mr. Gurrola's work and arranged for him to receive temporary disability benefits through July 11, 2000. A.R. at 107.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567.

On July 13, 2000, two days after the termination of his temporary disability benefits, Mr. Gurrola returned to his doctor and complained of worsening back pain. A.R. at 113. Concluding that Mr. Gurrola appeared to be "worsening with conservative care" although objective evidence of injury was "minimal," the doctor decided to refer Mr. Gurrola to a physiatrist, Dr. Bissell. Id. Dr. Bissell opined that Mr. Gurrola displayed "significant pain behaviors" and "was not getting any benefit from physical therapy." Id. at 215-16.

Mr. Gurrola was next evaluated on July 31, 2000, by Dr. Thomas Higginbotham, after Mr. Gurrola's attorney requested a change in health care provider. Id. at 156-59. Dr. Higginbotham saw Mr. Gurrola numerous times between 2000 and 2002. See id. at 402-06. At his initial appointment with Dr. Higginbotham, Mr. Gurrola complained of pain in his lower back, buttocks, and shoulders. Id. at 159-60. Dr. Higginbotham speculated that his patient might "have a ligamentous strain component" or "disc pathology of the low back because of the long-standing back pain, the intense nature and his failure to improve." Id. at 159. An MRI revealed that Mr. Gurrola had spondylolisthesis as well as stenosis near the base of his spine. Id. at 96.[2]

Mr. Gurrola filed an application for Social Security disability benefits on September 27, 2000. A.R. at 14. On October 2, 2000, Dr. Higginbotham completed a "work restriction evaluation" for Mr. Gurrola in which he indicated that Mr. Gurrola was capable of working eight hours a day, but could only sit for up to fifteen minutes at a time, walk for thirty, and stand for ten. Id. at 150. Although Dr. Higginbotham believed Mr. Gurrola could probably

---

[2] Spondylolisthesis is "the forward slipping (anterior displacement) of a vertebra upon the vertebra below." CHARLES J. FRANKEL & JAMES G. ZIMMERLY, LAWYERS' MEDICAL CYCLOPEDIA, ch. 16, pt. 2, § 16.14 (2009). Spinal stenosis is "a narrowing of the spinal canal." Id. § 16.32a.

also bend, stoop, twist, and/or kneel intermittently for at least two hours in an eight-hour workday, Mr. Gurrola disagreed and felt "he could probably only do these activities one or two times in a day." Id. at 152. Over the next several months Dr. Higginbotham and other doctors to whom Mr. Gurrola was referred attempted to treat his condition using a back brace and epidural injections, id. at 382-83, but Mr. Gurrola reported increased pain localized in his lower back and right buttock. Id. at 195. An orthopedic specialist recommend that Mr. Gurrola consider surgical decompression and fusion of selected vertebrae, id., but Mr. Gurrola did not act upon that recommendation. Id. at 217.

On February 27, 2001, Dr. Higginbotham opined in a second work restriction evaluation that Mr. Gurrola was no longer able to work an eight-hour day, and that he could sit or stand intermittently for only twenty minutes at a time for up to a total of two hours and walk for fifteen minutes at a time for up to a total of one hour. A.R. at 137. Dr. Higginbotham noted that, since Mr. Gurrola does not speak English, his ability to obtain a job meeting the appropriate specifications might be limited or nonexistent. Id. at 139.

In July 2001, as part of the application process for Social Security disability benefits, a doctor employed by the state of Colorado examined Mr. Gurrola and concluded that he was capable of working full eight-hour days, of which up to six hours could be spent sitting ("with normal breaks") and up to six standing or walking. A.R. at 87-88. Mr. Gurrola's application for Social Security benefits was subsequently denied on August 6, 2001. Id. at 30-31. The following month, Mr. Gurrola again reported increased pain to Dr. Higginbotham, id. at 287, and received injections which relieved about "50 % . . . of his pain about the buttocks and back." Id. at 286. Dr. Higginbotham reported that while "[s]ome of [Mr. Gurrola's] pain [was] frank

4

pain," the doctor "also g[o]t the feeling that a good bit of his pain [was] related to fear, worry and concern, and perhaps maybe even some anxiety." Id. Again Mr. Gurrola considered surgery, and again decided against it, because he was "scared of the risk involved." Id. at 314. The last meeting between Mr. Gurrola and Dr. Higginbotham — or any other treating physician — documented in the record occurred on April 9, 2009. Id. at 279. In June 2002 Mr. Gurrola moved to Mexico to live with his family. Id. at 307.

Mr. Gurrola appealed the initial denial of his application for Social Security benefits and, with his counsel and an interpreter, attended a hearing before an Administrative Law Judge in Colorado on October 7, 2002. A.R. at 14. On November 29, 2002, after that hearing but before the ALJ had issued a decision, Dr. Higginbotham completed a third work evaluation form. In this evaluation, Dr. Higginbotham opined that Mr. Gurrola was incapable of working a full-time job because of the pain he experienced. Id. at 277. He concluded that Mr. Gurrola could not walk or stand for even ten minutes at a time and could only sit for a maximum of twenty minutes at a time, for a total of up to one to two hours in an eight-hour workday. Id. at 275.

In spite of Dr. Higginbotham's recommendations, the ALJ rejected Mr. Gurrola's claim in a decision issued on February 27, 2003. A.R. at 14-24. He did not find Mr. Gurrola's allegations of pain credible, id. at 22, and thought that Dr. Higginbotham's work restriction evaluations were "without substantial support from the other evidence of record" and "not consistent with the claimant's activities and lifestyle" in Mexico, where Mr. Gurrola spent his time walking around his family's farm, visiting relatives, and feeding chickens and horses. Id. at 21. The ALJ concluded that while Mr. Gurrola did suffer from a severe impairment —

5

spondylolisthesis — he did not have a disability within the meaning of the Social Security regulations because he was capable of performing "sedentary to light work." Id. at 23.

Mr. Gurrola appealed that decision to the Social Security Administration's Appeals Council, which denied his request for review. A.R. at 5. He then petitioned for review of the ALJ's decision to the United States District Court for the District of Colorado. That court reversed the ALJ's decision and remanded the case for further review. Id. at 400-13. In that court's view, the ALJ "erred in rejecting the opinion of Gurrola's treating physician, Dr. Higginbotham, rejecting Gurrola's complaints of pain, and relying solely on the Medical-Vocational Guidelines (grids) to determine that Gurrola was not disabled." Id. at 409.

In an opinion dated May 21, 2005, A.R. at 375-92, the ALJ on remand explained at length why he had discounted Mr. Gurrola's subjective accounts of his pain, A.R. at 386-87, relied on a vocational expert to establish that work which Mr. Gurrola could perform is widely available, id. at 390-91, and assessed the reliability of Dr. Higginbotham's conclusions. Id. at 388-89. At the end of this reasoning process, the ALJ again found that Mr. Gurrola is not disabled. Id. at 391. Mr. Gurrola once again sought review of that decision by the Appeals Council, which once again rejected his request. Complaint ¶ 5. He now seeks review in this Court.

## II. DISCUSSION

Mr. Gurrola contends that the ALJ committed reversible error in concluding that Mr. Gurrola is capable of performing substantial work that is available in the national economy. See Plaintiff's Motion for Judgment of Reversal ("Pl. Mot.") at 3. According to Mr. Gurrola, the

ALJ erred by (1) "fail[ing] to properly address the opinions" of Dr Higginbotham contained in his October 2, 2000 and February 27, 2001 work restriction evaluations, id. at 7-8; (2) disregarding the Colorado district court's order to consider Dr. Higginbotham's conclusions, id. at 4-6; and/or (3) neglecting to develop the administrative record sufficiently. Id. at 11-15. The Court rejects each of these arguments.

### A. Standard of Review

In a hearing conducted to determine a claimant's eligibility for disability insurance benefits,

> the ALJ has the power and the duty to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination of disability. The Commissioner's ultimate determination will not be disturbed if it is based on substantial evidence in the record and correctly applies the relevant legal standards.

Butler v. Barnhart, 353 F.3d 992, 999 (D.C. Cir. 2004) (citations and internal quotation marks omitted). "Substantial evidence" need not amount to a preponderance of the evidence. Id. Rather, it consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted). Thus, the only question for this Court is whether the ALJ's decision is "based on substantial evidence and a correct application of the law." Id.

### B. Dr. Higginbotham's Opinions

"Because a claimant's treating physicians have great familiarity with his condition, their reports must be accorded substantial weight." Williams v. Shalala, 997 F.2d

1494, 1498 (D.C. Cir. 1993). Nevertheless, the opinion of a treating physician is controlling in a Social Security disability case only "if it is not inconsistent with other substantial record evidence and [it is] well-supported by medically acceptable clinical and laboratory diagnostic techniques." Jones v. Astrue, 654 F. Supp. 2d 37, 42 (D.D.C. 2009) (quoting Butler v. Barnhart, 353 F.3d at 1003) (internal quotation marks omitted; alterations in original). An ALJ assesses the persuasiveness of a medical opinion by considering a variety of factors, including the following: whether the physician in question personally examined the claimaint; the length of time the claimant has been a patient of the physician and the types of examinations the doctor has performed; the evidence cited by the physician in support of his or her conclusions; the consistency of those conclusions with other evidence in the record; and the expertise of the physician in a particular area if s/he is a specialist. 20 C.F.R. § 404.1527(d).[3] Under the so-called "treating physician rule," if the ALJ ultimately decides not to adopt the opinions of the treating physician, he must explain that decision and the reasons for it. Williams v. Shalala, 997 F.2d at 1498.

Mr. Gurrola argues that the ALJ did not properly assess the work restriction evaluations completed by Dr. Higginbotham on October 2, 2000, and February 27, 2001, by applying the criteria enumerated above. Pl. Mot. at 8. Furthermore, he asserts that while the ALJ obviously did not accord those evaluations controlling weight, the ALJ erred by neglecting to explain why he deemed them unpersuasive. Id. at 11. Mr. Gurrola also contends that since the district court in Colorado that originally reviewed this case ordered the ALJ to "properly assess

---

[3] Generally, more weight, and sometimes controlling weight, is given to the opinion of a treating physician. See 20 C.F.R. § 404.1527(d)(1)-(2).

. . . the opinions of Dr. Higginbotham" on remand, the ALJ's failure to conduct such a proper assessment constitutes violation of a court order and merits reversal. Id. at 4. These arguments would be persuasive if there were any support in the record for them, but there is not.

The record shows that the ALJ properly and exhaustively considered Dr. Higginbotham's opinions and that his decision to reject those opinions is supported by substantial evidence in the record. It is true that the ALJ did not discuss at length either the October 2, 2000 work restriction evaluation or the February 27, 2001 work restriction evaluation prepared by Dr. Higginbotham. See A.R. at 389. Instead, he focused on the more recent evaluation of Mr. Gurrola that was completed by Dr. Higginbotham on November 29, 2002. See id. In that evaluation Dr. Higginbotham found that Mr. Gurrola's ability to perform even sedentary or light work was severely restricted by chronic lower back pain. See id. at 278. This is the same opinion Dr. Higginbotham expressed in the October 2000 and February 2001 work evaluations, except that those evaluations did not recommend quite so many restrictions on Mr. Gurrola's activities. See id. at 137, 150. There therefore was no need for the ALJ to discuss the earlier evaluations at length.

The ALJ, however, did consider Dr. Higginbotham's November 29, 2002 opinion and the evidence supporting it in some detail. See A.R. at 386-97. He found Dr. Higginbotham's conclusion that Mr. Gurrola suffers from disabling pain inconsistent with the doctor's own observations that Mr. Gurrola's pain responses were sometimes "exaggerated," see id. at 155, and at least partly attributable to "fear, worry and concern, and perhaps maybe even some anxiety," rather than "frank pain." Id. at 286; see also id. at 389. He noted that in spite of Mr. Gurrola's claims of increasing pain, no physical examination or tests ever revealed nerve

9

damage or impairment that would explain such a high degree of discomfort. Id. at 389. The ALJ pointed out that while Dr. Higginbotham claimed his opinions were supported by EMG test results, there was no evidence in the record that an EMG had ever been performed. Id. There was thus little objective evidence upon which Dr. Higginbotham's November 2002 conclusions could be based, while other evidence — including earlier opinions of Dr. Higginbotham himself — seemed to contradict them.

The ALJ also explained at length that he did not consider Mr. Gurrola's representations to Dr. Higginbotham regarding his pain completely credible. Mr. Gurrola's descriptions of the pain varied widely, and, after an MRI was performed, seemed to change to better match the MRI results. A.R. at 388. Similarly, measurement of Mr. Gurrola's range of motion indicated impairment only after Dr. Higginbotham discussed "at length" with Mr. Gurrola how such measurements could indicate injury. Id. Furthermore, the activities in which Mr. Gurrola engaged at his home in Mexico — feeding farm animals and walking around the farm and to neighbors' homes — and the long bus trip he took to travel from Mexico to the administrative hearing in Colorado were not consistent with a conclusion that Mr. Gurrola could only sit, stand or walk for very short periods of time. Id. Since Dr. Higginbotham's impressions of Mr. Gurrola's condition were heavily based upon Mr. Gurrola's own representations, see, e.g., A.R. at 149, 152, the ALJ's conclusion that those representations could not be fully trusted obviously decreased the weight that could be accorded to the doctor's opinions.

The ALJ thus gave a plethora of reasons, amply supported by the record, for his decision not to accept Dr. Higginbotham's opinion that Mr. Gurrola's condition precluded even sedentary or light work. Contrary to the plaintiff's assertions, the ALJ was not required to

10

address separately and at length the two functional assessments of Mr. Gurrola that predated the November 29, 2002 evaluation. Each of the three evaluations consisted of Dr. Higginbotham's opinions regarding Mr. Gurrola's ability to perform various types of activities — for example, sitting, standing, and lifting — as of the date of the assessment. See A.R. at 137, 150, 275-79. The 2002 assessment was Dr. Higginbotham's last and most current evaluation of Mr. Gurrola's functional capacity. Dr. Higginbotham nowhere indicated in that assessment that he incorporated by reference the work restrictions recommended in prior assessments; instead, the assessment appears to contain a comprehensive list of Mr. Gurrola's limitations, as Dr. Higginbotham perceived them, as of November 29, 2002. The 2002 assessment thus superseded the 2001 and 2000 assessments, and the ALJ properly focused his attention on the most recent evaluation.

Furthermore, the ALJ used proper criteria to decide how much weight to give Dr. Higginbotham's opinions. He considered the length and nature of the doctor-patient relationship, see A.R. at 379-89 (documenting meetings between Dr. Higginbotham and Mr. Gurrola and examinations performed); the evidence upon which Dr. Higginbotham relied, see id. at 388-89; and evidence inconsistent with the doctor's conclusions. See id. at 386-89. By properly addressing the opinions of Dr. Higginbotham, explaining why he did not accept them, and accompanying his explanation with references to substantial evidence in the record, the ALJ also satisfied the order of the United States District Court for the District of Colorado that required him to give adequate consideration to Dr. Higginbotham's findings and conclusions. The ALJ's treatment of Dr. Higginbotham's opinions therefore does not provide grounds for reversal.

### C. Development of the Administrative Record

"[A]n administrative law judge has the affirmative duty to investigate fully all matters at issue and to develop the comprehensive record requisite for a fair determination of disability." Poulin v. Bowen, 817 F.2d 865, 870 (D.C. Cir. 1987). The plaintiff contends that the ALJ breached that duty in this case because he did not order a consultative examination of Mr. Gurrola or seek additional evidence, beyond that contained in the record, from Dr. Higginbotham. Pl. Mot. at 12, 14. The Court disagrees and finds that the ALJ adequately developed the record.

An ALJ may arrange for an additional examination of a claimant at the expense of the Social Security Administration if "the information [the ALJ] need[s] is not readily available from the record of [the claimant's] medical treatment source" or the ALJ is "unable to seek clarification from [the claimant's] medical source." 20 C.F.R. § 404.1512(f). Mr. Gurrola claims that the ALJ should have ordered a consultative exam of him because the last documented examination of Mr. Gurrola by Dr. Higginbotham occurred on April 9, 2002, and the ALJ issued his most recent decision in this case on May 21, 2005. Pl. Mot. at 13. Mr. Gurrola suggests that, as result of this gap between his last medical examination and the administrative determination, "a consultative examination was required to evaluate [his] impairments." Id. He is incorrect. No such examination is "required" under the statute, case law, or regulations. As Judge Walton has pointed out, it is the claimant's "responsibility to 'provide medical evidence showing that [he has] an impairment and how severe it is during the time that [he is] disabled.'" Hynes *ex rel.* Davis v. Astrue, Civil Action No. 01-1231, 2009 WL 1312545, at *4 (D.D.C. May 12, 2009) (citing 20 C.F.R. § 416.912(c)).

Mr. Gurrola, who was represented by counsel throughout the administrative process, does not claim that he suggested to the ALJ at any point that his impairment had worsened since his last visit with Dr. Higginbotham, or that he ever requested or sought an additional examination before the ALJ ruled. The ALJ therefore had no reason to think that a re-evaluation of Mr. Gurrola's condition was necessary, and he clearly had no obligation to update the record in the absence of evidence suggesting that the record was incomplete. "[A]lthough the ALJ has a duty to fully explore the facts, the ALJ does not act as counsel for the claimant." Hynes ex rel. Davis v. Astrue, Civil Action No. 01-1231, 2009 WL 1312545, at *4 (quoting Musgrave v. Sullivan, 966 F.2d 1371, 1377 (10th Cir. 1992)) (internal quotation marks omitted). The ALJ based his decision on numerous reports by Dr. Higginbotham, other doctors who had personally examined Mr. Gurrola, an agency medical expert, and a vocational expert, as well as on Mr. Gurrola's own testimony. He thus had ample evidence upon which to base his conclusions.

Finally, Mr. Gurrola asserts that the ALJ had a duty to "recontact" Dr. Higginbotham for additional information. An ALJ may seek such additional information from a treating physician when "the evidence . . . receive[d] from [the] treating physician or psychologist is inadequate [to permit the ALJ] to determine whether [a claimant] is disabled." 20 C.F.R. § 404.1512(e). According to Mr. Gurrola, the ALJ needed additional information because the ALJ found "that the Plaintiff's treating physician's reports contained conflicts." Pl. Mot. at 15. Nothing in the regulations or the case law requires an ALJ to recontact a treating physician when, as here, conflicts between the physician's opinions and other substantial evidence in the record convince the ALJ that those opinions should not be given controlling weight. As Mr.

13

Gurrola points out, an ALJ will contact a treating physician for more information when "the report from [a] medical source contains a conflict or ambiguity that *must be resolved*." 20 C.F.R. § 404.1512(e)(1) (emphasis added). But Mr. Gurrola has cited no specific conflict in the reports of Dr. Higginbotham that could be resolved only by obtaining "copies of [Dr. Higginbotham's] records, a new report, or a more detailed report." Pl. Mot. at 15. The ALJ did not object to Dr. Higginbotham's reports because he found them to be confusing or insufficiently detailed; he objected to them because he found the conclusions reached by the doctor to be unconvincing in light of the evidence contained in the record as a whole. See A.R. at 390.

### III. CONCLUSION

For the foregoing reasons, the decision of the Administrative Law Judge is affirmed. An Order consistent with this Opinion will issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: April 16, 2010

14